UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK LARRY,

        **Plaintiff,**

  v.              9:01-cv-1574

P. BYNO, Corrections Officer;
J. ANCTIL, Corrections Officer;
R. GIRDICH, Superintendent;
G. GOORD, Commissioner

        **Defendants.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**THOMAS J. McAVOY**
**Senior United States District Judge**

## DECISION and ORDER

**I. INTRODUCTION**

At all times relevant hereto, Plaintiff Mark Larry was an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), and was incarcerated in Franklin Correctional Facility ("Franklin"). Plaintiff, proceeding *pro se*, alleges violations of his civil rights by four DOCS employees. On October 4, 2001, Plaintiff filed a Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendant Lieutenant P. Byno violated his constitutional rights. On January 20, 2002, Plaintiff filed an Amended Complaint which named Defendants Sergeant James Anctil, Superintendent Roy Girdich, and Commissioner Glenn Goord, in their individual and official capacities. Specifically, Plaintiff alleges that, because he filed complaints with "Superior staff," he was physically assaulted by

Byno and was threatened to be killed if he continued to write complaints. See Am. Compl. at ¶ 12. Plaintiff further alleges that Goord failed to address his complaints about the "retaliatory, discriminatory [and] degrading treatment" of Franklin inmates, that Girdich allowed Byno to conduct an investigation into Plaintiff's claim of misconduct which allowed for further physical injury, and that Anctil was present when Byno conducted his investigation of Plaintiff's claim, but did not attempt to curb Byno's alleged attack on Plaintiff. See Am. Compl. at ¶¶ 12-16. Plaintiff's motion for injunctive relief was denied as moot in a July 29, 2002 order (docket no.34) and Plaintiff's remaining motion is for monetary damages.

Defendants moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6) in light of the Supreme Court's decision in Porter v. Nussle, 122 S. Ct. 983 (2002), which provides that a plaintiff must first exhaust administrative remedies before commencing litigation. On March 18, 2003, the Court granted Defendants' motion and Plaintiff's Complaint was dismissed without prejudice.

On appeal, the Second Circuit vacated the judgment and remanded the case for further proceedings in light of its decision in Hemphill v. State of New York, 380 F.3d 680 (2d Cir. 2004). Specifically, the Second Circuit directed this Court to determine whether administrative remedies were, in fact, "available" to the Plaintiff, or whether estoppel or "special circumstances" exist to excuse Plaintiff's failure to exhaust the administrative remedies in light of Hemphill.

## II. FACTS

On April 4, 2001, Plaintiff drafted and mailed a letter to Superintendent Girdich, Complaint #109-01, alleging retaliation and intimidation for having written prior complaints. Am. Compl. ¶ 10.

According to Plaintiff, on April 17, 2001, during the investigation of Complaint #109-01, he was assaulted by Byno in retaliation for writing to "Superior staff." Am. Compl. ¶ 12. During the alleged assault, Byno physically forced the Plaintiff against a wall and expressly "threatened to . . . kill[]" him if he continued to write to the Superintendent. Id. On April 4, April 21, and April 25, 2001, Plaintiff sent letters to Superintendent Roy Girdich. On April 13, 2001, a memorandum was drafted by Superintendent Girdich that acknowledged receipt of the Plaintiff's initial letter.

### III. DISCUSSION

For purposes of this decision on Defendants' motion to dismiss, the facts as alleged by Plaintiff in his Amended Complaint are accepted as true. Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994) (noting that "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant").

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court held that the PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The PLRA was enacted to "reduce the quantity and improve the quality of prisoner suits" by giving prison officials the first opportunity to deal with inmate complaints by internal processes. Id. at 524-25. The act's "dominant concern [is] to promote

administrative redress, filter out groundless claims, and foster better prepared litigation of claims aired in court," id. at 528, and "clarif[y] the contours of the controversy" once it is litigated. Id. at 525.

Following Nussle, the Second Circuit decided a series of cases on the extent of exhaustion required by inmate plaintiffs to meet the requirements of PLRA. Ortiz v. McBride, 380 F.3d 649 (2004); Abney v. McGinnis, 380 F.3d 663, (2004); Giano v. Goord, 380 F.3d 670, (2004); and Johnson v. Testman, 380 F.3d 691, (2004). In Hemphill the Second Circuit noted that:

> Read together, . . . [these] decisions . . . suggest that a three-part inquiry is appropriate in cases where a prisoner plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA. Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact "available" to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether "special circumstances" have been plausibly alleged that justify "the prisoner's failure to comply with administrative procedural requirements."

Hemphill, 380 F.3d at 686 (citations omitted). This three-part inquiry will be addressed in order.

**A. Whether administrative remedies were, in fact, "available" to the Plaintiff**

The DOCS has a well-established three-step Inmate Grievance Program ("IGP") to resolve inmate complaints. First, the inmate files a level 1 grievance (either on an Inmate Grievance Complaint Form, or on plain paper if the form is not readily available) with the Inmate Grievance Resolution Committee ("IGRC"). The IGRC, which is composed of fellow inmates and prison officials, must convene a hearing within seven working days, and issue a written decision within two days of the hearing. See Hemphill at 682. The level 1 grievance must be filed within fourteen days of

the alleged incident. 7 N.Y.C.R.R. § 701.7(a)(1). Next, the inmate has four days to appeal the IGRC decision to the superintendent of the facility, who must respond within ten days and must provide "simple directions" on how to appeal to the next level, the Central Office Review Committee ("CORC"). The inmate's final opportunity for resolution of his grievance is to appeal to the CORC within four working days of the Superintendent's decision, or in the situation where the inmate does not receive the written decision from the Superintendent within twelve working days, the grievant may appeal his grievance to CORC. Directive 4040, Part VII(F). The CORC then has 20 working days to render a decision. 7 N.Y.C.R.R. § 701.7(c)(4). There is also an expedited grievance procedure for prisoners who, as in the present case, allege that they have been harassed or assaulted by correctional officers. 7 N.Y.C.R.R. § 701.11. Under the regulation in place as of Plaintiff's alleged assault, it was unclear whether the expedited procedure altered the procedure for a prisoner to file a grievance.[1]

       The Second Circuit "has recognized that while the PLRA's exhaustion requirement is mandatory, certain caveats apply." Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004). In Hemphill, the Second Circuit addressed whether administrative remedies were "available" under facts that closely resemble those in the present case. In Hemphill, the prisoner alleged that several correctional officers had assaulted him and threatened him that he had "better drop" a claim that the officers believed he had filed. Following the incident, the plaintiff wrote a letter to the superintendent stating that he intended to file "criminal charges" against the officers, but never filed a grievance with the IGRC. See 380 F.3d at 683-84, 686. The Second Circuit articulated that the proper test for determining whether ordinary

---

[1] Effective on April 14, 2004, the regulation was amended to provide that the prisoner should follow the same procedures set forth in the three-step IGP. 7 N.Y.C.R.R. § 701.11(1) ("An inmate who wishes to file a grievance complaint that alleges employee harassment shall follow the procedures set forth in section 701.7(a)(1) of [the three-step IGP].").

grievance procedures were "available" was whether "a similarly situated individual of ordinary firmness [would] have deemed them available." Notably, the Court commented that

> threats or other intimidation by prison officials may well deter a prisoner of "ordinary firmness" from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts.

Id. at 688.

In the present case, Plaintiff alleges that he was physically assaulted by Defendant Byno in retaliation for his mailing an earlier complaint. See Am. Compl. ¶ 12. Although Plaintiff contends that his use of a "secondary means" to address the grievance was established by the superintendent, it is clear that these informal letters of complaint technically did not start the formal grievance process of the IGP. However the Second Circuit has reaffirmed that "in some circumstances, the behavior of the defendants may render administrative remedies unavailable." Hemphill, 380 F.3d at 686. If the allegation of physical assault and threats of violence are true, it is certainly plausible that Byno's conduct would deter a person of ordinary firmness from using the grievance process to grieve the instant claims, and, as in Hemphill, the Court is unable to conclude that the normal grievance procedures were "available" to Plaintiff.

### B. Whether estoppel exists to excuse Plaintiff's failure to exhaust the administrative remedies

The Second Circuit also held in Hemphill that "prison officials' threats or other inhibiting conduct may estop defendants from asserting the affirmative defense of non-exhaustion." 380 F.3d at 688 (restating the holding of Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004)). Plaintiff alleges that, during the investigation of Complaint #109-01, Byno physically assaulted him and expressly threatened

that he would kill him.  Arguably, Byno's words and actions implied that he would again assault Plaintiff if he mailed another complaint.  It, thus, may have been reasonable for Plaintiff to rely on Byno's threat and opt against filing a formal grievance and going straight to the Superintendent.  If these allegations are true, it could be concluded that Plaintiff's actions were been sufficiently inhibited and Byno should be estopped from raising the defense of non-exhaustion.

### C. Whether Plaintiff's failure to exhaust remedies is justified by "special circumstances"

The Supreme Court had held that the PLRA requires administrative exhaustion; however, there may be "certain 'special circumstances' in which, though administrative remedies may have been available and though the government may not have been estopped from asserting the affirmative defense of non-exhaustion, the prisoner's failure to comply with administrative procedural requirements may nevertheless have been justified."  Giano, 380 F.3d at 676 (citing Berry v. Kerik, 366 F.3d 85, at 87-88 (2004)).  In Hemphill, the Second Circuit held that the plaintiff's attempt to exhaust available administrative remedies by writing directly to a superintendent comported with DOCS procedural rules (or at least, reflected a reasonable interpretation of those regulations at the time), when the plaintiff received threats and his fear of retaliation justified sending a letter directly to a superintendent instead of filing a level one grievance.  380 F.3d at 690.  The special circumstances under Hemphill are not readily distinguishable from this case.  Like in Hemphill, in this case Plaintiff wrote directly to the superior officers, and purportedly also to Albany, skipping the level one grievance procedure.  Although there is no evidence of reliance on, or misinterpretation of, any of DOCS regulations, see Giano, 380 F.3d at 679, Plaintiff was under threats that, line in Hemphill, may justify writing a letter directly to a superintendent rather than filing a level one grievance.  See Hemphill, 380

F.3d at 690.  Upon consideration of the interplay between Byno's threats and the Plaintiff's decision to bypass filing a level 1 grievance, it cannot be said as a matter of law that special circumstances did not exist in this case.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' motion to dismiss on exhaustion grounds is DENIED.  The parties will be permitted to undertake limited discovery as to the alleged threats. Thereafter, Defendants may, if they choose, move for summary judgment on this issue.

IT IS SO ORDERED.

Dated: May 11, 2006

Thomas J. McAvoy
Senior, U.S. District Judge